IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAMELL SCOTT HURDLE** | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 21-CV-172** |
| | : | |
| **KYLE RUSSELL**, *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                             JANUARY 26, 2021

Plaintiff Ramell Scott Hurdle ("Hurdle"), a pretrial detainee being held at Lehigh Count Prison ("LCP"), filed this civil action pursuant to 42 U.S.C. § 1983.  Hurdle names as Defendants LCP Warden Kyle Russell, Dr. Molly Longacher and Prime Care Medical.  Hurdle seeks to proceed *in forma pauperis* and has submitted a copy of his institutional account statement.  For the following reasons, Hurdle leave to proceed *in forma pauperis* is granted and his Complaint is dismissed, *in part*, with prejudice and, *in part*, without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.     FACTUAL ALLEGATIONS**

In his complaint, Hurdle asserts that on December 2, 2020, an inmate named Eziekiel Lane who had tested positive for the COVID-19 virus was brought to the unit where Hurdle is housed. (ECF No. 2 at 5.)[1]  On December 7, 2020, Lane began throwing his own waste onto the floor of the unit.  (*Id.*)  This occurred everyday for the next two weeks.  (*Id.* at 4-5.)  Officials allegedly permitted the waste to remain on the floor, making other inmates sick.  (*Id.*)  Lane had to be

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

subdued at some point by officials using "OC spray" that "spreaded [sic] to every cell on the tier, making it almost impossible to breathe." (*Id.* at 5.) (*Id.*) Hurdle "knows for sure [he] caught the virus from inhaling the fumes and the over user of 'OC' spray." (*Id.*) Hurdle also alleges that during the time period between December 2 and 16, 2020, he had no access to showers or telephones, and his food was served cold. (*Id.* at 4.) Hurdle seeks pre-trial release from custody, money damages for the injury to his health, and to have corrections officers trained on the need to clean human waste and blood.

## II.     STANDARD OF REVIEW

The Court grants Hurdle leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees associated with commencing this civil action.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies.  This statute requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice. *Id.*  As Hurdle is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code.  This section provides, in part:

---

[2]     However, as Hurdle is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.   Claims Seeking Release From Custody

"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, to the extent that Hurdle seeks an order from this Court directing he be released from custody, that is not a plausible claim for relief under § 1983 and must be dismissed with prejudice.

### B.   Claims Based on Access to Showers and Cold Food

Hurdle's claims based upon not having access to showers for a period of time and having to eat cold food also fail to state plausible constitutional violations. Pretrial detainees like Hurdle are protected from unreasonable "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 295, 298 (1991); *Bell*,

441 U.S. at 538-39, 539 n.20).  To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Seiter*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Hurdle's allegations about showers and cold food are insufficient to satisfy either the objective or subjective components of a due process claim.  Courts have held that the Fourteenth Amendment due process clause does not require prisons to allow pretrial detainees daily shower access.  *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Coleman v. Hodges*, Civ. A. No. 18-1152, 2018 WL 6618459, at *5 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("To the extent that Plaintiff claims his mere placement in the RHU and the mere imposition of the restrictions regarding a mattress, showers and exercise for four days constituted "punishment" as prohibited by *Bell v. Wolfish*, he fails to comprehend the meaning of "punishment" as used in *Bell* and in the

Fourteenth Amendment context concerning pre-trial detainees."); *Robinson v. Danberg*, 729 F. Supp. 2d 666, 683 (D. Del. 2010) ("[T]he complaint does not set forth facts demonstrating that the alleged denial of a shower on a one-time basis was sufficiently serious to deprive plaintiff of the 'minimal civilized measure of life's necessities.'" (citing *Fortune,* 379 F. App'x at 122)); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471 (E.D. Pa. 2007) (citing *Farmer*, 511 U.S. at 834). Because Hurdle does not allege that he suffered any harm from the inability to access showers, the deprivation is not sufficiently serious and the claim is not plausible.

The claim about cold food is also not sufficiently serious and hence is not plausible. A constitutionally adequate diet "must provide adequate nutrition, but corrections officials may not be held liable [as to claims of inadequate food] unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Duran v. Merline*, 923 F. Supp. 2d 702, 719-20 (D.N.J. 2013) (citing *Stevenson*, 495 F.3d at 68 (3d Cir. 2007) and *Seiter*, 501 U.S. at 298)). Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." *Id* at 720 (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). "Under the Eighth Amendment, which provides a floor for the rights of pretrial detainees, *see Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), inmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being." *Duran*, 923 F. Supp. 2d at 720 (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramons v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *Mora v. Camden Cty.*, Civ. A. No. 09-4183, 2010 WL 2560680, at *8 (D.N.J. June 21, 2010)). Hurdle's allegations do not satisfy the objective requirement. "Being served cold meals . . . is not 'punishment' under *Bell*. So long as the food is

Case 5:21-cv-00172-NIQA   Document 5   Filed 01/26/21   Page 6 of 9

nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . ." *Duran*, 923 F. Supp. 2d at 720 (citing *Nickles v. Taylor*, Civ. A. Nos. 09-313, 09-557, 09-952, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010) ("A single or occasional incident involving spoiled food is insufficient to show that Plaintiff has been denied life's necessities"). He does not allege he was malnourished or became ill due to systemic problems with uncooked or cold food.

Hurdle also has failed to allege the subjective component of the *Stevenson* test regarding access to showers and being served cold food. The test for deliberate indifference is "subjective recklessness" as that concept is understood in criminal law. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). He has not offered any facts from which a court could reasonably infer deliberate indifference by anyone at LCP with respect to access to showers or to the minimum requirements of providing a non-harmful diet based on serving cold food. Without any allegation necessary to demonstrate harm from infrequent showering or substantial nutritional deprivation on a recurring basis, the claims are implausible for this additional reason.

    **C.**    **Remaining Claims**

Assuming Hurdle could state a claim based on his exposure to COVID-19 and the OC spray, he has not adequately stated a basis for the Defendants' liability.

        **1.**    **Claims Against Defendant Russell**

Hurdle has named LCP Warden Kyle Russell as a Defendant but makes no allegations against Russell. He appears to assert claims based on a theory of supervisor liability because Russell is the Warden of LCP. Such claims, as pled, are not plausible. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on*

*other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Because Hurdle makes no allegation to support a plausible claim of supervisor liability, the claim against Russell must be dismissed.[3]

### 2. Claims Against Defendants Dr. Longacher and Prime Care Medical

Hurdle also listed as Defendants in the caption of his Complaint, Dr. Molly Longacher and Prime Care Medical. The only time he mentions Dr. Longacher in the body of the Complaint is to assert that she denied him a COVID test between December 4 and 16, 2020. (ECF No. 2 at 4.) The only allegation about Prime Care is that it apparently employs Dr. Longacher and that "no one from Prime Care came" after corrections officers used OC spray to subdue Lane. (*Id.* at 4.)

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical

---

[3] Hurdle seeks as relief on his claim that corrections officers be trained in how to deal with human waste and blood. To the extent this relief may be interpreted as a failure to train claim, it too would not be plausible against Defendant Russell. "Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). A supervisor may be held liable where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy." *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989). Because Hurdle has not alleged the elements of a failure to train claim, it too must be dismissed as not plausible.

needs. *See Farmer*, 511 U.S. at 835. A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (holding that attaching documents to grievance form is insufficient under *Rode* to show personal direction or actual knowledge by recipient of underlying facts)).

Hurdle has failed to allege any act by Dr. Longacher and/or Prime Care concerning his medical care other (1) than he was denied a COVID test between December 4 and 16, 2020 and (2) no one from Prime Care came to the unit after the use of OC spray. He does not assert he

exhibited symptoms of the disease during the time period he was denied a test (or that he specifically asked for one) or any other facts to show that the alleged delay or denial of testing constituted deliberate indifference. He also does not allege that he needed medical treatment after the OC spray was used, was denied medical treatment, or if any Prime Care employee denied him care. Accordingly, the claims against Dr. Longacher and Prime Care Medical must also be dismissed as not plausible.

### IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss Hurdle's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as to all Defendants. His claim seeking immediate release is dismissed, with prejudice, and all other claims against all Defendants are dismissed, without prejudice. Hurdle may file an amended complaint if he can cure the defects the Court has identified in the claims that are dismissed without prejudice. An appropriate Order follows.

*NITZA I. QUIÑONES ALEJANDRO*
*Judge, United States District Court*