**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAMELL SCOTT HURDLE** | : | |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-172** |
| | : | |
| **KYLE RUSSELL,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                        April 9, 2021

In a prior Memorandum and Order filed on January 26, 2021 (ECF Nos. 5, 6), the Court granted Ramell Scott Hurdle leave to proceed *in forma pauperis* and dismissed his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Hurdle, a pretrial detainee being held at Lehigh Count Prison ("LCP"), was granted leave to file an amended complaint and has now returned with an Amended Complaint ("AC") filed on March 4, 2021 (ECF No. 7). Hurdle asserts violations of the Fourth, Eighth and Fourteenth Amendments as well as state law claims and has named as Defendants LCP Warden Kyle Russell, Dr. Longacher, LCP Deputy Warden Steven Miller and Lt. John Irving.[1] Each Defendant is sued in his or her individual and official capacities. For the following reasons, the Fourth and Eighth Amendment claims will be dismissed with prejudice, the official capacity claims will be dismissed without prejudice, and the balance of the claims will be served for a responsive pleading.

## I.        FACTUAL ALLEGATIONS

---

[1] In the original Complaint, Hurdle also named Prime Care Medical as a Defendant. Prime Care Medical is not named in the AC and will be terminated as a party.

Hurdle asserts that on December 7, 2020, an inmate named Eziekiel Lane who had tested positive for the corona virus, began throwing his own waste onto the floor of the unit where both he and Hurdle were housed.  (ECF No. 7 at 5.)[2]  This occurred everyday for the next two weeks.  (*Id.*)  Correctional officials led by Defendant Irving had to subdue Lane on December 8, 12, 13, 14 and 16, using a chemical agent.  (*Id.*)  Hurdle asserts that, after he was exposed to the chemical agent, Defendant Longacher "denied medical care for each of the December events . . . and request for Covid 19 tests."  (*Id.*)  Hurdle alleges that "on December 8 I first got effected by the [chemical agent] . . . causing my lungs to burn for the next 4 days.  I was denied medical care and decontamination and still feel the effects till this day."  (*Id.*)  He also asserts that "the situation was overseen" by Defendants Russell and Miller and, when the use of the chemical agent to subdue Lane continued, it caused Hurdle more lung damage and breathing difficulty.  (*Id.*)

After Hurdle asked for medical help, a nurse allegedly told him that Defendant Longacher "did not want to help inmates in the Hole" and "they should be alright [sic]."  (*Id.*)  Hurdle also asked for a COVID-19 test due to the exposure to Lane but was denied a test between December 4 and December 16, 2020.  (*Id.*)  He asserts that Defendant Miller assigned Lane to the same unit where Hurdle was housed, and the assignment was approved by Russell.  (*Id.*)  The waste Lane had thrown was allegedly left on the floor of the unit and not cleaned.  (*Id.*)  Russell denied grievances Hurdle filed about these events.  (*Id.*)

Hurdle asserts he has suffered "mental health injuries" because he thought he was going to die from being exposed to the chemical agent and because he was denied a COVID-19 test from December 4 to December 16, 2020.  (*Id.*)  In addition, he claims he suffered lung damage that remains untreated, and acid reflux as a result of having to eat his meals while the waste was on the

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

floor.  (*Id.*)  He seeks injunctive relief to stop prison officials from using chemical agents in open areas where other inmates might be exposed to it, as well as "a preliminary injunction in light of the COVID-19 virus and inmates and officials lives as well as the public."  (*Id.*)  Hurdle also seeks money damages.

## II.   STANDARD OF REVIEW

As the Court has granted Hurdle leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the AC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.*  As Hurdle is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Fourth Amendment Claims

While Hurdle cites the Fourth Amendment in the AC, he does not describe how any named Defendant violated his Fourth Amendment rights.  Nonetheless, the claim is not plausible.  The United States Supreme Court has held that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984), *id.* at 530 ("[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property"). Accordingly, the Fourth Amendment claims are dismissed pursuant to § 1915(e)(2)(B)(ii).

### B.    Eighth Amendment Claims

Hurdle asserts that the conditions of confinement he experienced at LCP violated both his Eighth and Fourteenth Amendment rights.  The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  Hurdle, however, was a pretrial detainee when the events he describes in the AC occurred.  Accordingly, his claims are governed by the Due Process Clause of the Fourteenth Amendment and not the Eighth Amendment.  *Id.*  While his due process claims will be served for a responsive pleading, this Eighth Amendment claims are not plausible and must be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii).

4

C.      **Official Capacity Claims**

Official capacity claims against the Defendants are indistinguishable from claims against the entities that employs them, in this case Lehigh County and Prime Care Medical, acting under contract with Lehigh County to provide medical care at LCP.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, are to be treated as a suit against the entity." *Id.*  To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

The same concepts apply to claims against a private health company providing services to inmates.  The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"  *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)).  Rather, in order to hold a private health care company like Prime Care Medical, Inc. liable for a constitutional violation under § 1983, Hurdle must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company

5

contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

Hurdle has failed to allege any policy or custom of Lehigh County or Prime Care Medical caused the constitutional violations he describes in this Complaint. Rather, he appears to have merely checked the "official capacity" box on the form complaint without understanding the nature of his act. Rather than delay service of the Complaint, the Court will dismiss the official capacity claims without prejudice on screening and consider granting Hurdle leave to file an amended complaint should be chose to pursue official capacity claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss the Fourth and Eighth Amendment claims with prejudice and the official capacity claims without prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as to all Defendants. The balance of the claims will be served for a responsive pleading. An appropriate Order follows.

***NITZA I. QUIÑONES ALEJANDRO***, **U.S.D.C. J.**